UNITED STATES of America, Appellee,

v.

Ciprian GONZALEZ,
Defendant-Appellant.

No. 929, Docket 86–1473.

United States Court of Appeals,
Second Circuit.

Petition for Rehearing Submitted
April 7, 1987.

Decided June 5, 1987.

Frederick H. Block, New York City, for defendant-appellant.

Maria T. Galeno, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before PIERCE and PRATT, Circuit Judges, and LASKER, Senior District Judge.[*]

PER CURIAM:

Ciprian Gonzalez appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York by the Hon. Lloyd F. MacMahon upon Gonzalez' plea of guilty to charges of possession and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Appellant contends that the district court erred (1) in refusing to grant his motion made pursuant to Fed.R. Crim.P. 32(d) to withdraw his guilty plea prior to sentencing and his counsel's motion to be relieved and (2) in failing to comply with the requirements of Fed.R. Crim.P. 11 before accepting his plea.

On September 22, 1986, with an interpreter present, Gonzalez pleaded guilty to one count of an indictment alleging that he participated in the sale of the cocaine derivative "crack" in July 1986. According to the presentence report, the government contended that Gonzalez sold two vials of crack with a combined net weight of 0.40 grams to a Drug Enforcement Administration agent for $20. During the plea allocution, in accordance with Fed.R.Crim.P. 11(c), the district judge informed Gonzalez of the rights he was giving up by pleading guilty and explained the penalties that could be imposed. The judge stated with regard to the possible sentence:

> Do you realize that if the court accepts your plea of guilty, the court has the power to sentence you to fifteen years in

---

[*] The Hon. Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

prison, fine you $250,000, and, if it sends you to prison, must impose a three-year special parole term to commence upon expiration of your prison sentence, and impose a $50 special assessment; do you understand that?

The judge also ascertained that Gonzalez understood the charges against him, and Gonzalez explained in his own words that he assisted a friend in making a crack sale. Although appellant's description of his actions differed from the government's version in that he did not recall personally passing the crack to the DEA agent, he did admit to participating intentionally in the transaction to earn some money. The judge made no inquiry into whether the plea was made voluntarily and was not the result of force, threats or promises.

On November 5, 1986, when the parties appeared before the district court for sentencing, Gonzalez' attorney moved to be relieved on the ground that appellant's statements to the probation officer, as documented in the presentence report, presented the attorney with a conflict of interest. The presentence report stated: "The Defendant maintains his innocence regarding the instant offense and claims he pled guilty on the advice of his attorney." Gonzalez' account of the events charged in the indictment, as related to the probation officer, also contradicted his sworn testimony to the court during his allocution. The judge denied the motion to be relieved, as well as a Rule 32(d) motion to withdraw the guilty plea, on the ground that at the time of his plea Gonzalez had been carefully interrogated to make certain he understood the nature of the charges against him, that he understood the consequences of pleading guilty, and that he was pleading be-

cause he was guilty of the crime charged and for no other reason. Sentencing was thereupon adjourned for reasons unrelated to the motions.

On November 12, 1986, when the parties reappeared before the district court for sentencing, Gonzalez' attorney renewed the motion to be relieved as counsel, and in the alternative, the motion to withdraw the plea. Defense counsel stated that Gonzalez had informed him that Gonzalez had expected that as a first offender he would be sentenced to probation, that at the time he pleaded guilty he did not know that he could go to jail, and that he did not remember his counsel telling him he could go to jail. Specifically, defense counsel stated: "[W]e now have a defendant who additionally says that in my preparation of him I basically told him that he was guaranteed probation." Gonzalez also represented through defense counsel that he either did not remember that during the allocution the judge had told him he could be sentenced to jail or did not understand the judge's statements. The judge denied both motions and sentenced Gonzalez to a ten-year term of imprisonment to be followed by a three-year special parole term and imposed a $10,000 fine. Gonzalez is serving his sentence.

Appellant claims on his petition for rehearing[1] that his plea must be vacated because the district judge failed during the plea allocution to inquire of Gonzalez, as required by Fed.R.Crim.P. 11(d),[2] whether any promises had been made to him and to inform Gonzalez, as required by Fed.R. Crim.P. 11(c)(1),[3] about the effect of any special parole term that might be imposed.

---

1. Gonzalez' judgment of conviction was affirmed by an Order issued by this panel on March 26, 1987. That Order is hereby vacated by the issuance of this memorandum opinion.

2. Fed.R.Crim.P. 11(d) provides:
    The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results

from prior discussions between the attorney for the government and the defendant or his attorney.

3. Fed.R.Crim.P. 11(c)(1) provides:
    Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
        (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, in-

In *United States v. Journet,* 544 F.2d 633 (2d Cir.1976), we examined Congress' 1975 amendments to Rule 11 and called for strict compliance with the rule's specific provisions.

In reviewing a district court's compliance with Rule 11, we can no longer accept as sufficient general statements or inquiries by the district judge on the theory that when construed in the light of surrounding circumstances they meet the rule's requirements. We now hold that, as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11. Otherwise the plea must be treated as a nullity.

*Id.* at 636. *Journet* involved the district judge's failure to advise a defendant of the maximum possible parole term that could be imposed, of his right to the assistance of counsel at trial, that a plea of guilty waived his right against self-incrimination, that no trial would be held if the guilty plea were accepted, and that he could be prosecuted for perjury if he made untrue statements under oath at the allocution. *See id.* at 634–35; Fed.R.Crim.P. 11(c)(1)–(5).

Two later decisions of this court appeared to relax the strict rule announced in *Journet.* In *United States v. Michaelson,* 552 F.2d 472 (2d Cir.1977), the court passed over the claim that the defendant was not advised as required by Rule 11(c)(5) that statements made under oath during the allocution could be the basis for a perjury prosecution in light of the fact that the defendant was not put under oath before questioning about his guilty plea. *Id.* at 477 (citing *Journet,* 544 F.2d at 637 n. 6). The *Michaelson* court also held that the failure to advise the defendant under Rule 11(c)(3) of his right not to be compelled to incriminate himself at trial did not require the setting aside of his guilty plea in circumstances in which trial had already begun and it seemed "highly unlikely that [Michaelson's] lawyer would not have advised Michaelson of his right not to incrimi-

nate himself." *Id.* The court took pains, however, to limit the case to its facts and stated: "Our decision therefore is not to be interpreted as overruling *Journet* in any respect." *Id.* at 477–78.

The second decision which appeared to signal a falling away from the strict rule was *United States v. Saft,* 558 F.2d 1073 (2d Cir.1977). In *Saft* the court treated the claimed Rule 11(c)(5) violation as inconsequential, as it had in *Michaelson. Id.* at 1079. As to the failure to advise the defendant as required by Rule 11(c)(3) that he would have the right to the assistance of counsel at trial, the court found that the defendant could not have had any doubts on that score in circumstances in which counsel had already been appointed for him and the record revealed that he fully expected such representation to continue through trial. *Id.* at 1080. As to two other claimed violations of Rule 11, the *Saft* court found there was compliance and stated that "the Rule does not say that compliance can be achieved only by reading the specified items *in haec verba,*" *id.* at 1079.

Both the *Saft* and *Michaelson* cases involved Rule 11 inquiries that were conducted by district judges before *Journet* was decided, and the opinions in both cases note this fact. *See Saft,* 558 F.2d at 1081; *Michaelson,* 552 F.2d at 477. Moreover, we have made clear that strict compliance with Rule 11 would in the future be enforced:

There should be no doubt after *Journet* that on a direct criminal appeal there will be little room for minimizing the effect of a failure to comply with Rule 11. Our recent decision in *United States v. Michaelson* probably represents the limit of how far we should go in that direction on a direct appeal. The policies behind Rule 11 are important and should be strictly enforced. When a district judge has failed to do so, allowing a defendant to replead will not ordinarily directly clash with society's interest in enforcing the penal laws. Witnesses in most cases will still be available. The

cluding the effect of any special parole term and, when applicable, that the court may also

order the defendant to make restitution to any victim of the offense;

price of a short delay and some extra expense is a modest one to pay to correct the error of a government official (a district judge).

*Del Vecchio v. United States,* 556 F.2d 106, 109 (2d Cir.1977) (citations omitted); *see also Saft,* 558 F.2d at 1082 n. 10 ("[W]e do not believe we are here going further than *Michaelson,* and the problem will shortly disappear as the teachings of *Journet* are taken to heart.").

■ The failure of the district court in this case to inquire of Gonzalez before accepting his guilty plea whether his plea was voluntary and "not the result of … promises apart from a plea agreement," as required by Rule 11(d), does in our view violate the prophylactic rule established for this circuit by *Journet.* Appellant raises a question of promises made to induce his plea by asserting that his attorney told him that he was guaranteed a sentence of probation. This claim was brought out in connection with Gonzalez' sentencing on November 12, 1986, and was viewed seriously enough by Gonzalez' attorney to precipitate a renewal of his motions to be relieved as counsel and for withdrawal of the plea.[4]

In this case the violation of Rule 11 was not a technical failure to question the defendant in the particular language of the Rule, but rather the absence of any inquiry at all on the subject. As we see it, there are three major purposes of the Rule 11(d) requirement which make it necessary that its provisions be faithfully observed. The first is to make certain that the plea is indeed voluntary; the second, to disabuse the defendant of any misconception he may have that anyone but the court has the authority to determine what his sentence will be; and third, to preserve the integrity of the plea by eliminating the basis for a later claim by the defendant that the plea was defective.

We are not suggesting that in this case appellant's experienced and well-regarded counsel would have made promises to his client as to the outcome of his plea. What is possible, however, is that chance remarks about a court's giving some credit for a plea of guilty or about the importance to a court of a defendant's first offender status may have been misconstrued by appellant to be an assurance that he would not be sentenced to prison. This case presents precisely a situation in which a defendant in pleading guilty may well have mistakenly relied—for whatever reason: confusion, language barrier, stress—on a promise which a proper allocution could have uncovered. It is for this reason that it is important for the court to flush out any discussions that have occurred regarding the possible sentence a defendant may receive and to dispel any belief a defendant may have that any promise or promise-like representation made to him by anybody is binding on the court. Such questioning by the district court is particularly important when dealing with a defendant like Gonzalez. There is nothing in Gonzalez' circumstances that would lead one to believe that this non-English speaking first offender certainly knew that no one, not even his attorney, could make him a binding promise of a non-custodial sentence.

■ The government contends that Rule 11(h),[5] the harmless error provision incorporated in Rule 11, mandates affirmance of appellant's conviction. The government's position must be rejected. To sanction such a departure as is involved here on a harmless error theory would undercut the value of Rule 11 prescriptions. As discussed above, mistaken reliance by appellant upon misunderstood representations of counsel regarding the sentence to be imposed was a real possibility here. Nor does the failure to make a Rule 11(d) inquiry in this situation appear to be the kind of Rule 11 violation that the Advisory Committee on Rules considered might constitute harmless error when it proposed the 1983 amendments adding subdivision (h). The Notes of the Advisory Committee illustrate

---

4. We do not mean to suggest that appellant or his attorney ever called to the district judge's attention that his Rule 11 inquiry was deficient in any respect.

5. Fed.R.Crim.P. 11(h) provides:
   Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

harmless error situations with examples such as "where the judge's compliance with subdivision (c)(1) was not absolutely complete, in that some essential element of the crime was not mentioned, but the defendant's responses clearly indicate his awareness of that element," or "where the judge's compliance with subdivision (c)(2) [sic] was erroneous in part in that the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings." *See Notes of Advisory Committee on Rules,* 18 U.S.C., App.-Rules of Criminal Procedure, Rule 11 at 452 (Supp. I 1983) (*"Advisory Committee Notes"*). No comparable circumstance is presented here.

Accordingly, the guilty plea must be vacated and the defendant given the opportunity to plead again to the indictment.

Appellant also contends in his petition for rehearing that the district judge failed to comply with Rule 11 in that he did not inform Gonzalez of "the effect of any special parole term," as specifically required by subdivision (c)(1). Although the judge did explain to Gonzalez that a mandatory minimum three-year special parole term would commence upon expiration of any prison sentence imposed, he did not inform Gonzalez of the other characteristics of a special parole term as described in 21 U.S.C. § 841(c).[6]

■ The government may be correct in its argument that the judge's explanation captured the essential difference between ordinary and special parole. Nevertheless, we think that in the future a defendant ought also to be told that if the terms and conditions of the special parole are violated, he may be required to serve a further term of imprisonment equal to the period of the special parole, with no credit for time already spent on special parole. While we recognize that a description of the effect of a special parole term complicates the plea allocution, fairness—as well as the express terms of Rule 11(c)(1)—requires that a defendant be informed of the potentially grave consequences of special parole.

■ We have considered appellant's other arguments, raised on his initial appeal, and find them to be without merit. Appellant's contention that the district court erred in denying his Rule 32(d) motion to withdraw his guilty plea prior to sentencing and in denying his attorney's motion to be relieved as counsel are rejected because neither decision constituted an abuse of discretion under the circumstances. Appellant correctly contends that the district court failed to comply with Rule 11(c)(1) in that Gonzalez was not informed during his plea allocution that a maximum special parole term of life could have been imposed; the error is harmless, however, because Gonzalez actually received no greater special parole term than the three-year minimum period about which he had been advised. *See* Fed.R.Crim.P. 11(h).[7]

6. 21 U.S.C. § 841(c) provides:

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section ... shall be in addition to, and not in lieu of, any other parole provided for by law.

7. The Advisory Committee on Rules gave an example of a circumstance in which its proposed harmless error provision, Rule 11(h), would apply by referring to the unpublished decision of the Court of Appeals for the Fourth

Circuit in *United States v. Peters,* 588 F.2d 1353 (4th Cir.1978). In *Peters* the judge failed to comply fully with Rule 11(c)(1), in that he did not correctly advise the defendant of the maximum years of special parole possible, but did inform him that the minimum special parole term was three years, and the defendant thereafter was sentenced to 15 years imprisonment and a three-year special parole term. *See Advisory Committee Notes* at 451–52. Such prior decisions of this court as *United States v. Palter,* 575 F.2d 1050 (2d Cir.1978), which, contrary to *Peters,* vacated guilty pleas where the district judge failed to advise defendants they could be sentenced to maximum special parole terms of life even though the special parole terms actually imposed were no greater than the minimum mandatory special parole terms of which they were advised by the judge, are therefore no longer good law in light of the 1983 amendments to Rule 11 which adopted subdivision (h).

The judgment of conviction is vacated and the case remanded to the district court in order to permit Gonzalez to replead.