UNITED STATES of America, Appellee,

v.

Philip ROSSILLO,
Defendant–Appellant.

No. 1164, Docket 87–1437.

United States Court of Appeals,
Second Circuit.

Argued May 10, 1988.
Decided Aug. 11, 1988.

Louis M. Freeman, New York City (Freeman, Nooter & Ginsberg, New York City, of counsel), for defendant-appellant.

Michael A. Guadagno, Asst. Attorney-In-Charge, Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Edward A. McDonald, Attorney-In-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D.N.Y.), for appellee.

Before VAN GRAAFEILAND, PIERCE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Philip Rossillo appeals from a judgment of conviction under 18 U.S.C. § 1962(d), following a plea of guilty entered in the United States District Court for the Eastern District of New York (Bramwell, J.). Rossillo argues in this appeal that the district court erred in refusing to grant his motion pursuant to Fed.R.Crim.P. 32(d) to withdraw his plea of guilty prior to sentencing. Because the court failed to ensure that the plea of guilty was voluntarily and knowingly entered as required by Fed.R.Crim.P. 11, we vacate defendant's guilty plea.

## BACKGROUND

The indictment charged Philip Rossillo and twenty-four others with, *inter alia,* conspiracy to commit a RICO violation, 18 U.S.C. § 1962(d). After extensive plea negotiations between Rossillo's counsel and the government, a plea agreement was reached providing that Rossillo's sentence would not exceed fourteen years and that Rossillo would be allowed to bring relevant facts regarding his medical condition to the court's attention before sentencing.

On June 9, 1986, the fourteen defendants, including Rossillo, who had agreed to plead guilty to the RICO violation appeared before Judge Bramwell. Before accepting the guilty pleas, the district court advised the defendants as a group of their constitutional rights, the nature of the charges against them and the consequences of their pleas. Afterwards, Judge Bramwell inquired whether the defendants understood that the court could ask them questions about the offenses to which they offered to plead guilty. The court then asked each defendant individually what his answer was to its question. When it was Rossillo's turn to respond, he said "Yes, Your Honor." This procedure was followed throughout the plea proceedings. The court also informed defendants that if their pleas of guilty were accepted, there would be no trial and that they would be waiving this constitutional right. Rossillo indicated that he understood the consequences of his guilty plea.

Judge Bramwell then proceeded to determine the factual basis for the pleas by reading the relevant portions of the indictment to which the defendants were pleading. Since each defendant was charged with a different combination of racketeering acts, each attorney advised the court as to those acts his respective client would admit guilt. After Rossillo's attorney informed the court of the specific predicate acts with which Rossillo was charged, the district court asked Rossillo if the facts underlying the alleged predicate acts were true. Rossillo admitted that they were true. Next, the district court asked the defendants if they had been threatened or coerced in any way into pleading guilty. All of the defendants, including Rossillo, answered no. The district court then inquired whether defendants were under the

influence of any drug, alcohol or other substance:

> THE COURT: At the present time, here and now, are you under the influence of any drug, alcohol or other intoxicants?
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> THE COURT: Mr. Philip Rossillo?
>
> [MR. FREEMAN]: Your Honor, this is an exceptional circumstance.
>
> THE COURT: He has—his heart condition.
>
> [MR. FREEMAN]: Yes.
>
> THE COURT: Thank you.

Finally, the court asked the defendants how they pleaded to the racketeering conspiracy count as charged in Count One of the indictment. Rossillo pleaded guilty.

At the conclusion of the proceedings, the court stated that it found a factual basis for the pleas and accordingly accepted the pleas of guilty to Count One as to each of the defendants including Rossillo, whose sentencing was postponed due to his deteriorating medical condition. Almost a year later, on May 8, 1987, Rossillo moved before sentencing to withdraw his plea pursuant to Fed.R.Crim.P. 32(d). Rossillo claimed that the court did not comply with Rule 11. The court found, however, that the Rule 11 requirements were satisfied and that there was "no evidence that [Rossillo's heart] condition or medical treatment in any way impaired his ... guilty plea." On July 17, 1987, the district court, therefore, denied Rossillo's motion to withdraw his plea.

According to the terms of his plea agreement, Rossillo then was given an opportunity to present before the court testimony regarding his medical condition and the effects of a lengthy term of incarceration on his physical health. After hearing the testimony on September 16, 1987, the court sentenced Rossillo to fourteen years imprisonment.

## DISCUSSION

Rossillo contends on this appeal that in accepting his plea of guilty, the district court did not comply with the requirements of Fed.R.Crim.P. 11. Specifically, he argues that he was under the influence of medication rendering him unable to enter a voluntary and knowing guilty plea, and that the district court erred in failing to inquire whether the medication affected the voluntariness of his plea. Because in this case we believe that the district court should have inquired further into Rossillo's ability to offer his plea before finding that it was voluntarily and knowingly entered, we agree with defendant that his guilty plea must be vacated.

Before accepting a plea of guilty, Rule 11 requires that the district judge determine whether the defendant "understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy v. United States*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1170, 22 L.Ed. 2d 418 (1969); *see* Fed.R.Crim.P. 11. The district court must "satisfy itself that the defendant is offering the plea voluntarily and that he is competent to understand the nature of the charge, his constitutional rights, and the scope of the penalty provided by law." *Saddler v. United States*, 531 F.2d 83, 85 (2d Cir.1976) (per curiam) (citations omitted). The Supreme Court has declared that a plea of guilty "cannot support a judgment of guilt unless it [is] voluntary in a constitutional sense." *Henderson v. Morgan*, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *see Saddler*, 531 F.2d at 86 ("plea may be accepted only if the waiver is found to be voluntar[il]y and intelligently given"). A plea may be involuntary because the defendant does not understand that he is waiving constitutional rights or because the defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *Henderson*, 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13. Not only must the plea of guilty be voluntary, it must also be a knowing and intelligent act done with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed. 2d 747 (1970).

In *McCarthy*, the Supreme Court set forth two purposes of Rule 11:

First, ... it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.

394 U.S. at 465, 89 S.Ct. at 1170. The Court noted that constitutional principles lie behind the rule, since a defendant who pleads guilty waives several fundamental constitutional rights. *Id.* at 466, 89 S.Ct. at 1170. Consequently, in order for the waiver to be valid under the due process clause, it must be " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

In rejecting the government's argument that the district court could *assume* that the defendant understood the charges against him, the *McCarthy* Court stressed the need for "on the record" determinations of defendant's understanding. Thus, the Court held that the district court could not make outside-the-record assumptions about defendant's ability to understand the nature of the proceedings because Rule 11 mandates that the district court personally interrogate the defendant. Personally questioning the defendant not only aids the court in determining the voluntariness of the guilty plea, it also serves to aid that determination in any post-conviction proceeding based on a claim that the plea was not voluntary. *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171; *see United States v. Gonzalez,* 820 F.2d 575, 579 (2d Cir.1987) (per curiam) (explaining that faithful observance of Rule 11 eliminates basis for later claim by defendant that plea was defective).

■ In asserting that his plea was not knowingly and intelligently made, Rossillo contended before Judge Bramwell, as he does on appeal, that the court failed to determine whether he was taking medication that impaired his ability to understand the nature of the charges against him and the consequences of his plea. The district court refused to credit Rossillo's contention that he failed to understand the nature of the proceedings when he pleaded guilty since the underlying plea agreement was, in the court's words, the product of "complex and lengthy negotiations." The government argues that the district court made every effort to "expose[ ] the defendant's state of mind on the record through personal interrogation," *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171, and that Rossillo and his attorney were obliged to bring any information relating to impairment to the court's attention.

■ Although the district court personally interrogated Rossillo, an on-the-record determination was not made concerning whether Rossillo was under the influence of any medication, drug or intoxicant. Instead, when the district judge asked Rossillo for a response to its question, the *court* simply alluded to defendant's heart condition. Judge Bramwell never received a definitive "yes" or "no" answer from defendant. By acknowledging Rossillo's heart condition, the district court apparently assumed that defendant's condition did not interfere with his mental capabilities. As *McCarthy* makes clear, however, Rule 11 is not satisfied unless the district court determines the voluntariness of the guilty plea based upon on-the-record responses to its questions. *See also Irizarry v. United States,* 508 F.2d 960, 964 (2d Cir.1974) (stressing that to the extent district judge " 'resorts to "assumptions" not based upon recorded responses to his inquiries,' " he fails to comply with Rule 11) (quoting *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171).

We have recognized previously that district judges must strictly adhere to the requirements of Rule 11 in order to ensure the voluntariness of guilty pleas. *United States v. Gonzalez,* 820 F.2d 575 (2d Cir. 1987) (per curiam); *United States v. Saft,* 558 F.2d 1073 (2d Cir.1977); *United States v. Journet,* 544 F.2d 633 (2d Cir.1976). In *Journet,* we stated that the district court must "personally inform the defendant in open court of specifically enumerated rights and other matters pertaining to the

question of whether the plea is a voluntary and knowing one." 544 F.2d at 635. In view of the fact that a defendant's constitutional rights were at stake, we refused to accept the government's contention that failure to comply could be treated as harmless error and observed that Rule 11 requires " 'the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.' " *Id.* at 636 (quoting *Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)); *see Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). In *Saft*, we explained that while Rule 11 does not require slavish adherence to the precise wording of the statute when the court informs the defendant of his constitutional rights, Rule 11 does require that each of its detailed elements be covered with defendant during the plea allocution. 558 F.2d at 1079. In *Gonzalez*, we again stated the necessity of strict adherence to Rule 11:

> There should be no doubt after *Journet* that on a direct criminal appeal there will be little room for minimizing the effect of a failure to comply with Rule 11.... The policies behind Rule 11 are important and should be strictly enforced.

820 F.2d at 578 (quoting *Del Vecchio v. United States*, 556 F.2d 106, 109 (2d Cir. 1977)). The *Gonzalez* court held that, in view of defendant's argument that he pleaded guilty because his attorney promised him a sentence of probation, the failure of the district court to ask defendant whether his plea was "not the result of ... promises apart from a plea agreement," Fed.R.Crim.P. 11(d), required that the plea be vacated. In so holding, we emphasized that it was important for the district court to "flush out any discussions that have occurred regarding the possible sentence a defendant may receive and to dispel any belief a defendant may have that any promise or promise-like representation made to him by anybody is binding on the court." 820 F.2d at 579.

■ In this case, the district court's failure to further question defendant about any medication he was taking for his heart condition, the possible effects that that medication might have on his decision to plead guilty, and his ability to understand the plea proceedings, dictates, consistent with our prior holdings in *Journet, Saft* and *Gonzalez*, that we once again reaffirm our commitment to strict compliance with Rule 11. We believe that if there is *any* indication, as there was in this case, that defendant is under the influence of any medication, drug or intoxicant, it is incumbent upon the district court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty. We know of no other way to ensure both that defendant understands the constitutional rights that he is relinquishing by pleading guilty and that the plea is truly voluntary. *See McCarthy*, 394 U.S. at 465, 89 S.Ct. at 1170.

The duty of a district court to inquire further when defendant's ability to understand the nature of the plea proceedings is at issue was recently addressed by the Third Circuit. In *United States v. Cole*, 813 F.2d 43 (3d Cir.1987), in response to the district judge's question whether defendant was under the influence of any medication or drug, Cole stated that he had taken some drugs the previous night. The district court in *Cole* never questioned defendant as to the possible effects of the recent drug use on his competence to plead guilty. Relying on the Supreme Court's decision in *McCarthy*, the Third Circuit explained that defendant's affirmative answer called into question his ability to make an intelligent and competent waiver of his constitutional rights. *Id.* at 46; *see McCarthy*, 394 U.S. at 466–67, 89 S.Ct. at 1170–71. Thus, the court held that

> Rule 11 counsels a district court to make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights.

813 F.2d at 46.

We believe that the Third Circuit's holding in *Cole* argues persuasively here for

requiring the district court, before finding that Rossillo's plea was voluntarily and knowingly entered, to have inquired further into defendant's state of mind once the court was alerted that defendant might be under the influence of medication. *See also Saddler,* 531 F.2d at 87 (pointing to defendant's unresponsive answers to the court's inquiries as "warning flags" indicating that defendant may not have been competent to plead guilty); *United States v. Thomas,* 468 F.2d 422, 426 (10th Cir. 1972) ("record must show that the trial judge personally asked the proper questions and *received answers* from the accused indicating his awareness of the charge against him and the consequences of his guilty plea") (emphasis added), *cert. denied,* 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973); *cf. United States v. Auen,* 846 F.2d 872, 877–78 (2d Cir.1988) (bizarre behavior of defendant requires that district court make contemporaneous on-the-record findings of defendant's competence to stand trial). Consequently, we specifically reject the government's argument that defendant or his counsel was obliged to elaborate on the "exceptional circumstance[s]" that Rossillo's situation presented. Rule 11 directs the *court* to determine that the plea is voluntary. Fed. R.Crim.P. 11(c), (d). The rule places no such burden on the defendant. Indeed, as the Supreme Court in *McCarthy* observed, before the 1966 amendments to Rule 11, not all district judges personally interrogated defendants. It was to alter this procedure that Congress expressly placed the duty of inquiry on the court. *See* 394 U.S. at 465–66, 89 S.Ct. at 1170–71. In addition, the fact that the underlying plea agreement was the result of "complex and lengthy negotiations" is of no consequence. The point is not whether defendant was competent to enter into plea negotiations but rather whether, at the time of the plea allocution, he was able to understand the nature and consequences of his decision to plead guilty.

Due to the large number of defendants before the district judge at the plea hearing, we appreciate the difficulty of explicit compliance with Rule 11. However, be-cause the constitutional rights of each defendant are at stake, the district court must be scrupulous in determining on the record whether defendant's guilty plea was voluntarily and intelligently offered. Otherwise, the plea "has been obtained in violation of due process and is therefore void." *McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1171.

## CONCLUSION

The district court failed to receive a direct response to its question concerning whether Rossillo was under the influence of any medication, drug or other substance. The court apparently assumed that, although defendant had a heart condition, he nevertheless was competent to enter a plea of guilty. We find, however, that the failure to make an on-the-record determination whether Rossillo was under the influence of any medication, and, if he had taken any medication, whether his plea was voluntarily and knowingly offered, constitutes reversible error. Accordingly, in light of the constitutional principles involved and the need for careful compliance with Rule 11, we conclude that defendant's guilty plea and conviction cannot stand. Defendant's guilty plea, therefore, is vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

*Vacated and remanded.*

Circuit Judge VAN GRAAFEILAND dissents in a separate opinion.

VAN GRAAFEILAND, Circuit Judge, dissenting:

Prior to Rossillo's oral plea of guilty before Judge Bramwell, he entered into a Rule 11(e) Plea Agreement, which provides in part as follows:

Pursuant to the provisions of Rule 11(e)(1)(c) of the Federal Rules of Criminal Procedure, Philip Rossillo will plead guilty to Count One (Racketeering Conspiracy—18 U.S.C. § 1962(d)) of Indictment 85 CR 00244(s) entitled *United States v. Anthony Colombo, et al.,* and will specifically admit to Racketeering

Acts 13(b) and 14. After entering this plea, Philip Rossillo will be sentenced to a term of imprisonment not to exceed 14 years.

Thereafter, Rossillo and his attorney, together with thirteen other represented defendants who had signed Rule 11(e) agreements, appeared before Judge Bramwell and pled guilty, as each defendant had agreed to do. At the very outset of the hearing, Rossillo's attorney, an officer of the court, informed Judge Bramwell in his client's presence, "Mr. Rossillo does intend to plead guilty." However, before accepting pleas from any of the defendants, Judge Bramwell addressed them as a group as follows:

Now, before accepting the pleas of guilty, I must advise each of you as to your constitutional rights, the nature of the charge against you and the consequences of your plea.

You have a constitutional right to a speedy and public trial by jury with the assistance of counsel; the right to confront and cross-examine the witnesses against you; the right to compulsory process to bring in witnesses on your behalf; the right not to incriminate yourself by being compelled to testify at the trial; the right to plead not guilty, in which event the government will be required to prove your guilt beyond a reasonable doubt, and, in the event the government fails, the jury would have the obligation of finding you not guilty.

Now I will ask each of the defendants separately, do you understand that the Court may ask you questions about the offense to which you offer to plead guilty?

In response to the question which concluded the quoted statement, Rossillo and each of the other thirteen defendants told the court that they understood. The court then continued:

I further state to each of the defendants, if the plea of guilty is accepted as to each of you, there will be no trial so that you will be surrendering and waiving your right to a trial and all the constitutional rights embodied in such a right.

Again, all of the defendants said that they understood. With the approval of the defendants, the court then read the indictment's general allegation of a racketeering enterprise, which included seventy-two separate racketeering acts, at which point the prosecutor said:

The racketeering activity is described in the next paragraph, but as far as each defendant is concerned, we have negotiated which particular racketeering acts the defendants will in fact allocute so there is no need to read through the entire list of 72 racketeering acts.

The court then proceeded down the line of defendants, asking the attorney for each to allocute his client's illegal acts. Rossillo was the fifth to be heard, and his allocution proceeded as follows:

MR. FREEMAN [Rossillo's attorney]: Mr. Rossillo respectfully requests that the Court allow him to withdraw his entered not guilty plea and plead guilty to Count One of the indictment. Specifically, acts, predicate acts 13(b) and 17(a), and if the Court permits me I'll go ahead with the allocution.

THE COURT: You may go ahead with the allocution.

MR. FREEMAN: Your Honor, Mr. Rossillo admits that he was part of an enterprise and the group of people that were part—that were in that enterprise engaged in certain predicate acts. The two predicate acts that Mr. Rossillo was involved in are predicate act 13(b), which involves the arson of a 1974 Ford van.

And the specific facts of that predicate act are that on or about December 31, 1981, in New York, Mr. Rossillo and another intentionally damaged a motor vehicle, to wit, a 1974 Ford van.

Mr. Rossillo, is that true?

DEFENDANT ROSSILLO: Yes.

MR. FREEMAN: The second predicate act is 17(a) and it involves a conspiracy to rob a Mr. Victor Soboleski. The details are that between January and August, 1983, both dates being approximate and inclusive, in the Eastern District of New

York, Mr. Rossillo and others willfully and unlawfully combined, conspired and confederated to forcibly steal property from a Victor Soboleski, in violation of state law.

Is that true, Mr. Rossillo?

DEFENDANT ROSSILLO: Yes.

MR. GUADAGNO [AUSA]: Your Honor, that's sufficient.

Following the allocutions, Judge Bramwell inquired of counsel concerning the plea agreements. Donald S. Sullivan, Chief of the Sullivan County District Attorney's Rackets Bureau, and a party to the agreements, answered on behalf of the prosecution. The exchange concerning Rossillo was as follows:

MR. SULLIVAN: Your Honor, this is a similar plea agreement. Forgive me if I have to consult from time to time. There are quite a few of these. I don't want to get them wrong.

This is a similar plea agreement containing a sentence not to exceed or a cap of 14 years with regard to the defendant Philip Rossillo.

It furthermore contains similar provisions regarding other matters being pursued by other prosecutors' offices which will be satisfied by this plea.

THE COURT: All right. Mr. Freeman, anything additional?

MR. FREEMAN: Yes, Your Honor.

As the Court knows, Mr. Rossillo has had open heart surgery. I understand Mr. Guadagno has agreed not to oppose a medical hearing, if the proper facts are put before you, before the time of sentence.

MR. GUADAGNO: Your Honor, I believe that the agreement is that Mr. Rossillo will bring any relevant facts to Your Honor's attention before the time of sentence. If Your Honor feels that a hearing is called for, we certainly will not oppose such a hearing.

THE COURT: Thank you.

Anything else, Mr. Freeman?

MR. FREEMAN: Nothing, Your Honor.

THE COURT: Thank you.

MR. FREEMAN: The agreement speaks for itself other than that.

When the discussion concerning all fourteen plea agreements had concluded, Judge Bramwell said:

All right. My next question to each of the defendants, have you been threatened or coerced in any way into pleading guilty.

Rossillo's response to this question was, "No, Your Honor."

At Judge Bramwell's request, the Assistant United States Attorney stated that the maximum penalty that could be imposed on the racketeering count was twenty years and a fine of not more than $25,000. Following this, Judge Bramwell asked each defendant whether he had discussed his plea of guilty with his lawyer, and Rossillo answered, "Yes, Your Honor." The court then informed all defendants that they would have the assistance of their attorneys at the time sentence was imposed. Judge Bramwell also asked each defendant whether he was under the influence of any drug, alcohol, or other intoxicants, and the following colloquy between Judge Bramwell and Rossillo's attorney took place:

THE COURT: Mr. Philip Rossillo?

MR. FREEMAN: Your Honor, this is an exceptional circumstance.

THE COURT: He has—his heart condition.

MR. FREEMAN: Yes.

THE COURT: Thank you.

The court thereafter accepted guilty pleas from all of the defendants. At the conclusion of the hearing, Barry Slotnick, attorney for Anthony Colombo and spokesman for the entire group of attorneys, addressed the court as follows:

MR. SLOTNICK: Your Honor, before we close, may I—I know it is getting late.

THE COURT: It's all right.

MR. SLOTNICK: The Court works very late.

THE COURT: All right.

MR. SLOTNICK: It's so rare that nice things are said on the record. I would like to, now that it is all said and done, just indicate to the Court that all defense lawyers worked very hard together and

it's rare that we have the cooperation of so many lawyers and I think we thanked each other for seeing that the due administration of justice works out.

With regard to Mr. Sullivan and Mr. Guadagno, they are very worthy opponents. They are very tough. They are hard prosecutors. We all walked away from this a little unhappy and maybe that's what makes a fair agreement.

But on behalf of all the defense lawyers, and I guess I speak for all, in behalf of the Strike Force, we thank Your Honor for the kindness and consideration you gave us knowing how hard we were working.

Thank you, Judge.

When Rossillo appeared before Judge Bramwell for sentencing, his attorney informed the judge, "There has really been a plea bargain struck here and Mr. Rossillo's plea bargain was that his sentence was not to exceed 14 years...." Judge Bramwell lived up to his end of the bargain; Rossillo wants to welsh on his own commitment. On May 13, 1987, eleven months after Rossillo pleaded guilty, he moved for permission to withdraw his plea. The only affidavit in support of the motion was that of Rossillo's attorney, the same attorney who informed Judge Bramwell that his client "does intend to plead guilty", who participated in the allocution of his client, who stood idly by while his client repeatedly told Judge Bramwell that he understood, who made no objection when Attorney Slotnick, speaking on behalf of all the defense lawyers, noted that the "due administration of justice" had worked out and thanked Judge Bramwell for his kindness and consideration.

Seeking a peg on which to hang his hat, the attorney made a number of baseless contentions concerning alleged violations of Rule 11, which were rejected below and which my colleagues kindly ignore. Although the attorney knew or should have known that 18 U.S.C. § 1963 does not provide for a mandatory minimum penalty, the attorney contended that Judge Bramwell violated Rule 11(c)(1) by not informing Rossillo of the "mandatory minimum penalty provided by law." Although the attorney knew or should have known that the Plea Agreement provided that the forfeiture count in the indictment was to be dismissed, the attorney asserted that Judge Bramwell erred by not mentioning the possibility of forfeiture under section 1963. Although the attorney knew or should have known that Rossillo was not questioned under oath, see Rule 11(c)(5), he asserted that Judge Bramwell erred in not advising Rossillo that his answers to the judge's questions might later be used against him in a prosecution for perjury. Despite the pertinent plea colloquy quoted above, counsel asserted that Rossillo was not asked if his plea was voluntary and not the result of force or threats. Despite the existence of the Plea Agreement between Rossillo and government officials, his attorney also alleged error based on Judge Bramwell's failure to inquire whether Rossillo's willingness to plead guilty resulted from prior discussions between his attorney and the government. The foregoing groundless contentions are mentioned simply to establish a framework within which to place the hearsay statements in the affidavit of Rossillo's attorney that Rossillo "believes" he is innocent and "maintains" that, when he pled guilty, he was suffering from nausea, dizziness and confusion as a result of medication he was taking for his heart condition. According to the attorney, Rossillo also "maintains" that "he was not feeling well and failed to understand the nature of the proceeding."

The affidavit did not contain one non-hearsay word concerning the attorney's own observations and beliefs. Moreover, it made no claim that Rossillo was confused when he signed the Plea Agreement. "Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice ... and unlikely to be driven to false self-condemnation" when entering into such an agreement. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Although a plea agreement does not obviate the need for

meeting Rule 11 requirements, the existence of such an agreement nevertheless is "strong evidence of the voluntary nature of the plea." *Gregory v. Solem*, 774 F.2d 309, 316 (8th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986).

Judge Bramwell was unwilling to accept the attorney's hearsay statements concerning Rossillo's alleged lack of understanding. After carefully reviewing the record, my reaction is exactly the same. During the plea proceedings, the only information that Rossillo and his attorney gave Judge Bramwell was that Rossillo had a heart ailment, a condition he had in common with millions of other Americans. This ailment, which had existed since at least 1979, did not prevent Rossillo from becoming an active member of a major racketeering enterprise, from being convicted of possessing a sawed-off shotgun, from being married while awaiting trial in the instant case, and from participating in the "complex and lengthy negotiations" which led to the fourteen plea agreements. It did not prevent him from knowingly pleading guilty to only two of the many offenses with which he was charged.

Even if I were not convinced of the lack of merit in this appeal, I would write to express my strong condemnation of the allegations of appellant's attorney that Judge Bramwell acted out of prejudice and bias. These contentions concerning this principled and conscientious judge are completely unfounded and should not have been made.