**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marco Tulio LORA,**
**Defendant–Appellant.**

**No. 428, Docket 89–1193.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1989.

Decided Feb. 5, 1990.

Bonnie Phillips, Coconut Grove, Fla., for defendant-appellant.

Richard N. Palmer, Deputy U.S. Atty., D. Conn., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., New Haven, Conn., of counsel), for plaintiff-appellee.

Before FEINBERG and MESKILL, Circuit Judges, and COFFRIN, District Judge.[*]

COFFRIN, District Judge.

Defendant Marco Tulio Lora appeals from a judgment of conviction entered Feb-

---

[*] Honorable Albert W. Coffrin, Senior United States District Judge for the District of Vermont, sitting by designation.

ruary 17, 1989 by the United States District Court for the District of Connecticut, José A. Cabranes, J., upon a guilty plea to one violation of 18 U.S.C. § 1956(a)(1)(B) (laundering of monetary instruments) entered June 1, 1988. Defendant Lora claims that Judge Cabranes failed to comply with the requirements of Federal Rule of Criminal Procedure 11 when he accepted defendant's guilty plea because the judge did not ensure that Lora understood the nature of the charges against him and a factual basis for his plea was not established. We affirm the judgment of conviction.

## Background

On January 20, 1988, a grand jury returned an eighty-five count superseding indictment charging Lora and twenty-six co-defendants with violations of several federal laws. On June 1, 1988, Lora appeared before Judge Cabranes to enter a plea of guilty to Count 44 of the superseding indictment which charged Lora with laundering of monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(B) and 2.[1] Count 44 alleged that on December 10, 1986, Lora and five co-defendants conducted financial transactions involving $978,645 in proceeds from specified unlawful activity, knowing these funds were derived from some sort of unlawful activity and knowing the transactions were designed to disguise the nature, location, source, ownership or control of the funds.

At the beginning of defendant's Rule 11 hearing, Judge Cabranes explained that the purpose of the proceedings was to ensure that the defendant was entering his guilty plea knowingly and voluntarily. The court also ascertained that defense counsel had spent several hundred hours reviewing the case, including thirty to forty hours consulting with Lora about his decision to plead guilty. Judge Cabranes then explained the elements of a § 1956(a)(1)(B) violation to the defendant, including the requirement that the government would have to prove Lora knew the money involved in the transaction was from some sort of unlawful activity. After Judge Cabranes explained these elements to the defendant, Lora stated that he understood them. As required by Rule 11, Judge Cabranes then ascertained that no promises or threats had been made to Lora to induce his plea, and explained to Lora the constitutional and legal rights that he would waive by pleading guilty.

Judge Cabranes then requested the defendant to recount in his own words the underlying facts of his offense. During this inquiry, the following colloquy occurred:

Court: Would it be fair to say, from what you've said, that you were conducting or attempting to conduct a financial transaction?

Defendant: I am aware, your Honor, with my actions, I facilitated the transportation of some money between New York and Connecticut of which I should have been aware, *I should have known,* that undoubtedly this was coming from illegal activity (emphasis added).

Court: And you knew, I gather, that the transaction in which you were involved was designed to conceal or disguise the nature, location, source, ownership or control of those proceeds of unlawful activity?

Defendant: Yes, your Honor, in which *I should have been aware* that that money was from illegal sources (emphasis added).

---

1. Title 18, U.S.C. § 1956(a)(1)(B) states in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity

shall be sentenced to a fine ... or imprisonment.

Title 18, U.S.C. § 2 states in relevant part:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

After this colloquy, the government moved to supplement the record with a six-page stipulation of facts setting forth the government's proof of Lora's guilt. Stating that he had reviewed the stipulation with his client and that "we do not disagree with anything in this proffer," defense counsel waived an open court reading of the document and it was added to the record. The government's proffer described in detail Lora's money laundering activities and concluded as follows:

> "[T]he government would prove that the monies laundered by ... Marco Lora ... were cash proceeds of cocaine trafficking, and that the source of the money was known to Lora.... In addition, the government would prove that these transactions, and in particular the transaction of December 10, 1986, [were] designed in whole or in part to conceal and disguise the true source, ownership, control, location and nature of the money involved.

Judge Cabranes then addressed the defendant with regard to the government's proffer:

> Court: You see that document in front of you, I believe six pages [referring to the proffer]?
>
> Defendant: Yes, your Honor.
>
> Court: You've reviewed that prior to today's proceeding, in consultation with Mr. Pedro Segarra, the interpreter, and with Mr. Burstyn [defense counsel]?
>
> Defendant: Yes, your Honor.
>
> Court: You're fully familiar with the contents of that statement?
>
> Defendant: Yes, your Honor.
>
> Court: Is there anything in particular in that statement with which you disagree?

> Defendant: No, your Honor.
>
> Court: Did you perform each of the acts with which you are charged in Count 44 of the indictment?
>
> Defendant: Yes, your Honor.
>
> Court: Did you perform each of these acts knowingly?
>
> Defendant: Yes, your Honor.
>
> Court: Did you perform each of these acts voluntarily and intentionally?
>
> Defendant: Yes, your Honor.

The court then accepted defendant's plea petition and entered a finding that defendant was guilty as charged to Count 44 of the indictment.

### Discussion

Defendant claims that statements he made in his Rule 11 hearing to the effect that he "should have known that the money was from illegal activities," demonstrated that there was no factual basis for his plea and that he did not understand the elements of the § 1956(a)(1)(B) offense with which he was charged.[2] Because Rule 11 of the Federal Rules of Criminal Procedure requires that the court inform the defendant of "the nature of the charges to which the plea is offered" and make inquiry sufficient to ensure there is a "factual basis" for the plea, defendant now moves to vacate his conviction and withdraw his guilty plea.[3] See Fed.R.Crim.P. 11(c)(1), (f).

The Second Circuit has adopted a standard of strict adherence to Rule 11. *United States v. Rossillo*, 853 F.2d 1062 (2d Cir.1988); *United States v. Gonzalez*, 820 F.2d 575 (2d Cir.1987); *United States v. Journet*, 544 F.2d 633 (2d Cir.1976). However, a possible defect in Lora's plea hear-

---

**2.** Defendant also claims that 18 U.S.C. § 1956(a)(1)(B) requires a "knowing" mental state rather than mere recklessness or negligence. Since the Government concedes this and it accords with the plain meaning of the statute, we do not address this issue.

**3.** Although defendant did not petition the sentencing court to vacate the conviction and withdraw his plea, this appeal is properly before this court. Federal Rule of Criminal Procedure 32(d) states that:

> (d) *Plea withdrawal.* If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea must be set aside only on direct appeal or by a motion under 28 U.S.C. § 2255.

Because defendant has already been sentenced, direct appeal is a proper way for him to proceed at this time.

ing does not necessarily warrant vacation of his conviction. Pivotal in this determination is the fact that the trial court questioned and advised defendant of all matters required by Rule 11, and elicited responses from the defendant from which the court could conclude that Lora fully understood the nature of the charges against him and assented to the factual basis for them. This circumstance distinguishes the instant case from *Rossillo, Gonzalez* and *Journet.* In *Rossillo,* the trial court failed to elicit a response from a defendant during a Rule 11 hearing stating that the defendant was not under the influence of intoxicating drugs. *Rossillo,* 853 F.2d at 1065. This omission warranted vacating defendant's plea because there was nothing on the record to show that the plea was "knowing" and unaffected by medication.[4] Similarly, *Gonzalez* involved the complete failure of a trial court to ask if defendant had been induced into entering a guilty plea by threats or promises not contained in the plea agreement. *Gonzalez,* 820 F.2d at 579. *Journet* involved other omissions. In that case, the court failed to inform the defendant of the maximum sentence for his offense, of his right against compulsory self-incrimination, that his in-court statements could be used against him in a perjury prosecution and that if he pleaded guilty there would be no further trial of any kind. *Journet,* 544 F.2d at 636–37.

In contrast, the trial court in this case fully informed defendant of all his rights and obtained knowing, voluntary waivers of all of these rights. While the colloquy at issue does, if viewed in isolation, arguably show that the defendant was uncertain of the charges against him, the record discloses that overall the court obtained Lora's clear acknowledgement that

he understood the allegations and agreed to the factual basis for the plea. The judge correctly instructed Lora on the elements of a § 1956(a)(1)(B) offense—including the mens rea element of knowledge—and informed Lora that the Government would have to prove the truth of each of these elements beyond a reasonable doubt. Lora expressly stated that he understood these elements and the burden of proof.

Most importantly, Lora and his counsel stipulated in open court to the factual proffer that set forth defendant's illegal conduct and intent. The factual statement recounted Lora's extensive involvement in the money laundering scheme as well as conduct and statements from which a jury could easily infer that Lora knew the money involved was from unlawful activity and knew the transaction was designed to conceal the identity of the transacting parties. The proffer concluded with an express statement that the government would prove that Lora knew the money was from unlawful activity and that the transactions were designed to conceal the identity of the transacting parties. Lora expressly acknowledged the truth of these allegations.

Thus, this case is different from *Rossillo, Gonzalez* and *Journet* where the court completely failed to record certain required instructions and waivers of legal and constitutional rights. Despite Lora's momentary equivocation, it appears there was a factual basis for Lora's plea and that Lora knowingly and voluntarily waived his right to make the government prove his guilt at trial. Lora does not specifically claim he misunderstood the charges against him. Even if the isolated colloquy to which he points arguably indicates a less than clear

---

4. Defendant suggests that *Rossillo* creates a general duty on the part of the court to inquire further if circumstances make a defendant's waiver of rights suspect. As the *Rossillo* panel stated:
   We believe that if there is *any* indication, as there was in this case, that defendant is under the influence of any medication, drug or intoxicant, it is incumbent upon the district court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty.

We do not read *Rossillo* as establishing a duty of inquiry as broad as that ascribed to it by defendant. In any case, we note that the trial court's instruction on the statutory elements, including the "knowing" mental state, and the open court stipulation to the government's factual proffer, satisfied any duty the court might have had (in the face of Lora's claimed equivocation) to inquire further.

understanding on Lora's part, when viewed in its entirety, the record clearly demonstrates that Judge Cabranes adequately informed Lora of the charges against him and correctly established a factual basis for his plea.

## Conclusion

For the reasons stated above, the judgment of conviction entered by the district court is affirmed.