**UNITED STATES of America, Appellee,**

v.

**Louis A. FERRARA, Defendant–
Appellant.**

**No. 459, Docket 91–1291.**

United States Court of Appeals,
Second Circuit.

Argued by appellant Nov. 25, 1991.

Submitted by appellee Nov. 25, 1991.

Decided Jan. 16, 1992.

Daniel H. Murphy, II, New York City,
for defendant-appellant.

John–Claude Charbonneau, Rutland, Vt.,
Asst. U.S. Atty., D. Vt. (Charles A. Caruso,
Acting U.S. Atty., D. Vt., Gary G. Shat-
tuck, Asst. U.S. Atty., of counsel), for ap-
pellee.

Before OAKES, Chief Judge, and
FEINBERG and WALKER, Circuit Judges.

FEINBERG, Circuit Judge:

Louis A. Ferrara appeals from a judg-
ment of the United States District Court
for the District of Vermont, Fred I. Parker,
J., convicting Ferrara of bank fraud after a
guilty plea pursuant to a plea agreement.
In April 1991, the judge sentenced Ferrara
to five years in prison, the maximum under
the statute at the time of the offense, to
commence the day of sentencing and to run
concurrently with a 36–month federal sen-
tence Ferrara was then serving. Ferrara
had never been warned that he would not
have the right to withdraw his plea even if
the judge failed to accept the recommended
sentence under the plea agreement. Fer-
rara claims that because of that omission
and because he was not sentenced in ac-
cordance with his reasonable under-
standing of the plea agreement, he is enti-
tled to resentencing according to his under-
standing of the agreement or, alternatively,
to be given the chance to withdraw his
plea. For reasons given below, we vacate
the judgment of conviction and remand
with instructions that Ferrara be given the
opportunity to withdraw his plea of guilty.

### I.  Background

In August 1990, Ferrara was indicted in
the District of Vermont and charged with
having committed bank fraud three years
earlier in violation of 18 U.S.C. § 1344.  At

the time of the indictment, Ferrara was serving a 36-month prison sentence that had been imposed in 1989 in the United States District Court for the Southern District of New York upon a conviction for conspiring to launder money in 1987–88. He had commenced serving his sentence on that conviction in October 1989.

In December 1990, Ferrara entered into a plea agreement with the government, through Assistant United States Attorney John–Claude Charbonneau, concerning the bank fraud indictment. The agreement provided that Ferrara would plead guilty to the indictment, and in exchange the government agreed to "recommend, at the time of sentencing, that a sentence of imprisonment be imposed concurrent to that federal sentence of imprisonment which [Ferrara] is currently serving." The parties agreed that the plea was the type described in Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, and Ferrara acknowledged that the judge had discretion to impose a prison sentence up to the statutory maximum of five years.

Later in December 1990, Ferrara entered his guilty plea before Chief Judge Franklin S. Billings of the District of Vermont. The judge indicated that he would be the person who sentenced Ferrara, and then asked Ferrara whether he understood that the government had agreed to recommend a sentence but that the sentence in the plea agreement would only be a recommendation and that the judge had discretion to determine the actual sentence. Ferrara indicated that he understood. The judge did not, however, follow Federal Rules of Criminal Procedure 11(e)(1)(B) and 11(e)(2), which require that "at the time the plea is offered.... the court shall advise the defendant that if the court does not accept the recommendation ... the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). Judge Billings thereafter stated that, "[t]he record may show that we will accept the plea," and ordered a presentence report.

The case, however, was subsequently referred to Judge Fred I. Parker, for further proceedings. In April 1991, Ferrara appeared before Judge Parker for sentencing, and the government was represented by a different Assistant. The judge indicated that he did not understand why the bank fraud offense should be treated as overlapping with the money laundering offense for which Ferrara had been serving a sentence at the time of the plea agreement. Judge Parker asked the Assistant, "Do you have any understanding from Mr. Charbonneau about the reason for the recommendation of a concurrent sentence?" The Assistant replied that the two offenses were "part of the same scheme." The judge then stated that he was accepting "the fact that the sentence should run concurrent with the one that's presently being served," and he sentenced Ferrara to "the maximum sentence of five years in prison, to commence immediately, and that five-year sentence to run concurrent with the one that's already being served." When Ferrara's counsel asked whether the five-year sentence would begin retroactively to the date (in October 1989) when the three-year money laundering sentence began, the judge responded, "No, it runs concurrent from today."

Thereafter, Ferrara took this appeal.

## II.  Discussion

### Claimed Errors

■ Ferrara contends that the sentence he received violated his plea agreement with the government, and that he never received the warning called for by Rule 11(e)(2). Therefore, according to Ferrara, he should either be resentenced in accordance with his understanding of the agreement or be given the opportunity to withdraw his guilty plea.

Ferrara first contends that the plea agreement was violated because he received a sentence "in excess of the plea agreement." At first blush, this argument seems to be insubstantial because the agreement mentions no specific figure and, in any event, the government's obligation under the agreement was only to recommend a "concurrent" sentence and the prosecutor did that. However, on further analysis, Ferrara's argument becomes

stronger. He argues, in effect, that he pled guilty in return for the government's recommendation that his sentence run no longer than the still unserved part of the sentence he was then serving on the money laundering charge, that the judge accepted the recommendation and then did not follow it.

Despite what the Assistant said in the district court, the government claims before us that Ferrara's understanding of "concurrent" is unsupported. The word "concurrent" in the plea agreement did not, according to the government, suggest a beginning date, an ending date or the length of the sentence; it meant only that the money laundering and bank fraud sentences would not be consecutive, just as Judge Parker provided. The government adds that Ferrara himself understood the word "concurrent" the same way that the judge did or he would have raised the violation of his plea agreement at the time of sentencing or in a subsequent Rule 35 motion.

These arguments obviously raise the issue of the meaning of "concurrent" in the plea agreement. It appears that both attorneys at the sentencing believed that the money laundering and bank fraud offenses constituted essentially one offense and therefore, implicitly, would merit only the one sentence of 36 months already imposed for the former. The defense attorney stated that the reason for a concurrent sentence was "a recognition that all of this [referring to the Vermont bank fraud] arose out of the same contacts, the same group of people, the same essential activity in terms of illegal activity down in New York as the previous indictment and conviction [referring to the money laundering]." The defense attorney concluded by requesting that the court "go along with the government's recommendation and simply impose a sentence concurrent with the sentence that Mr. Ferrara has already been serving for three years, and that the concurrent sentence issued by this Court we are requesting be a three-year sentence for the same time period."

The Assistant, who had neither negotiated the plea agreement nor represented the government when the guilty plea was taken, stated that the sentence should be concurrent because "it's the same conduct or the same scheme ... that this defendant was involved with, and really I'm talking for myself at this point. I'm not talking for Mr. Charbonneau [the Assistant who had negotiated the guilty plea agreement and had been present when the plea was taken], just trying to think it through as he might, that it was all part of this scheme that he had been dealing with in New York. . . . if it all had occurred in the Southern District of New York, it probably would have been run concurrent—concurrently."

It is apparent that Judge Parker resisted the notion that the money laundering and bank fraud should essentially be treated as part of the same offense. Nevertheless, the judge stated that he was accepting "the fact that the sentence should run concurrent. . . ." However, Judge Parker's construction of the word "concurrent" to allow the imposition of a sentence beginning on the day of sentencing and exceeding the money laundering sentence by 42 months may well have been in conflict with Ferrara's understanding. Under *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir.1982) (per curiam), cert. denied, 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983), a sentence pursuant to a plea agreement must follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence. It is true that in *Paradiso* the defendant had bargained for "concurrent" sentences, but the evidence showed that his actual intent in the agreement was to ensure that he did not serve more than a ten-year sentence, an intent that was fulfilled by the district judge's reduction in Paradiso's sentence. On the record in this case, in contrast, Ferrara could well have had the reasonable understanding and expectation of "concurrent" sentences that ended or, at the very least, began on the same date.

On this record, including the statements in the district court by the attorneys for

both parties, the word "concurrent" is at least ambiguous, as Ferrara argues to us. One reasonable interpretation of "concurrent" is "not consecutive," as the government now contends. However, other reasonable interpretations are that the sentences "begin at the same time" or "end at the same time." The performance required of the government was to recommend a "concurrent" sentence, but what that reasonably meant to Ferrara (and to the government) is not at all clear, and the problem is compounded by the change in Assistants appearing at the crucial times before different judges. Moreover, the sentencing judge said he was accepting the recommendation, but it appears that from Ferrara's point of view, he was rejecting it.

■ Were this the entire picture, we might remand for an evidentiary hearing to explore the matter further. But here, Ferrara also claims that he never received the warning required by Rule 11(e)(2) that he could not withdraw his guilty plea even if the court did not accept the prosecutor's recommendation. The government concedes that this is true. Putting to one side for the moment the government's argument that the lack of warning is harmless error, we believe that under the circumstances Ferrara should not be required to abide by the ambiguous plea agreement. It is unfortunate that in drafting the agreement, the government failed to make its terms absolutely clear. We think it is unfair to penalize a defendant for this carelessness, and we suggest that in the future prosecutors exercise greater care in preparing the plea agreements that they ask defendants to sign. Clarity is critical to insure fairness and to protect "the substantial constitutional interests implicated by plea agreements." *Innes v. Dalsheim,* 864 F.2d 974, 979 (2d Cir.1988), cert. denied, 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989).

*Harmless Error*

The government argues that even if we find that there was error here, Ferrara nonetheless should not be entitled to withdraw his plea of guilty. The government claims that Ferrara fully understood that the government's recommendation would not be binding upon the court and that the actual sentence to be imposed was within the sole discretion of the court up to the statutory maximum. Thus, the government points out that the plea agreement so states, that when the plea was taken Chief Judge Billings instructed Ferrara that the actual sentence was within the judge's discretion and that Ferrara's counsel advised the court at that time that he had been careful to explain to defendant that sentencing was within the judge's sole discretion. Under these circumstances, the government argues, section (h) of Fed. R.Crim.P. 11 governs. That section provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The government claims that the failure of the district court here to advise Ferrara—as it was required to—that the guilty plea could not be withdrawn was "a mere technical violation" that did not affect Ferrara's substantial rights. To buttress its point, the government emphasizes that Ferrara made no attempt to withdraw his plea after Judge Parker sentenced him.

■ The harmless error argument is a substantial one. Section (h) was added to Rule 11, effective August 1, 1983, to make clear that guilty pleas "should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error." Fed.R.Crim.P. 11 advisory committee's notes (1983 Amendment Rule 11(h)). At the same time, however, the Committee made clear that the meaning of "harmless error" in the context of Rule 11 "is left to the case law," id., and Rule 11 violations found on direct appeal to be "harmless" would be "fairly limited." Id. That Ferrara did not attempt in the district court to withdraw his guilty plea is not dispositive, and does not waive the objection. *Paradiso,* 689 F.2d at 30. Ferrara may have been confused about his rights, for example, by Judge Parker's statement that he was accepting the plea agreement. Ferrara's lawyer exhibited such confusion by asking, after the sentence was announced, "Just so

the record's clear, my understanding the Court to say that the five-year sentence imposed runs concurrent with the three-year—from the date the three-year was initiated, October of 1989?" One of the reasons for giving the Rule 11(e)(2) warning is to disabuse a defendant of whatever mistaken notions the defendant's lawyer has conveyed to the defendant in a plea bargaining situation. See *United States v. Gonzalez*, 820 F.2d 575, 579 (2d Cir.1987). Giving the Rule 11(e)(2) warning, moreover, ensures that a defendant has had a specific opportunity to withdraw a guilty plea when the defendant is informed that the agreement with the government is not binding upon the court. Ferrara has never been given such an opportunity.

It is true that in some circuits this kind of defect has been viewed as of small consequence, see, e.g., *United States v. de le Puente*, 755 F.2d 313, 315 (3d Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985); *United States v. Thibodeaux*, 811 F.2d 847, 848 (5th Cir.), cert. denied, 483 U.S. 1008, 107 S.Ct. 3236, 97 L.Ed.2d 741 (1987); *United States v. Otte*, 729 F.2d 1207, 1208 (9th Cir.1984). But under circumstances very similar to those present here, other circuit courts have found reversible error. See *United States v. Graibe*, 946 F.2d 1428 (9th Cir.1991); *United States v. Theron*, 849 F.2d 477, 481 (10th Cir.1988); *United States v. Iaquinta*, 719 F.2d 83, 85 (4th Cir.1983). All three cases were decided after the effective date of rule (h).

As the government acknowledges here, "[t]he Second Circuit has adopted a standard of strict adherence to Rule 11," *United States v. Lora*, 895 F.2d 878, 880 (2d Cir.1990). "[W]e have made clear ... that deviations from Fed.R.Crim.P. 11 will not be tolerated." *United States v. Burruezo*, 704 F.2d 33, 36 (2d Cir.1983) (citation omitted). " '[O]n a direct appeal there will be little room for minimizing the effect of a failure to comply with Rule 11.' " *Burruezo*, 704 F.2d at 36 (citation omitted). And in *United States v. Rossillo*, this court "once again reaffirm[ed] our commitment to strict compliance with Rule 11." 853 F.2d 1062, 1066 (2d Cir.1988).

We held in *Burruezo* that the trial judge's failure to give the pleading defendant Rule 11 warnings constituted reversible error, even though the trial judge there had told the defendant that " 'the Court can act independently of whatever arrangements you may make with the Government' " and "[i]n response to the judge's inquiry, Burruezo replied that he understood what the judge had just said," 704 F.2d at 35, just as the government points out occurred in this case. Like Ferrara, the defendant in *Burruezo* did not at sentencing or at any time afterward complain about the discrepancy between the plea agreement and the sentence imposed; he first raised the claim on appeal from the judgment of conviction. 704 F.2d at 35. Nevertheless, the conviction was reversed, because if the judge took the plea agreement as a recommendation, he "should have warned Burruezo prior to his plea, as required by the rule, that the court was not obligated to follow the agreement *and that Burruezo would not be able to retract his guilty plea if the court later chose not to abide by the agreement.*" 704 F.2d at 36 (emphasis added).

It is true that *Burruezo* was decided before section (h) became effective, but *Lora* and *Rossillo* were not. In *Lora*, we specifically stated that "[p]ivotal in this determination [that the "possible" error in that case did not warrant vacating the conviction] is the fact that the trial court questioned and advised defendant of *all matters required by Rule 11.*..." 895 F.2d at 881 (emphasis added). In the present case, the district judge failed to do so. We have pointed out that on direct appeal (as distinguished from collateral attack) "allowing a defendant to replead will not ordinarily directly clash with society's interest in enforcing the penal laws.... The price of a short delay and some extra expense is a modest one to pay to correct the error...." *Del Vecchio v. United States*, 556 F.2d 106, 109 (2d Cir.1977). This statement certainly holds true in this case, in which only one year has passed since the pleading at issue took place.

Under all of the circumstances, we believe that Ferrara must be given the chance to withdraw his guilty plea. We do not hold that a failure to give the warning required by the combination of Rules 11(e)(1)(B) and 11(e)(2) can never be harmless error. We hold only that the omission in this case, in view of the apparent misunderstandings and confusion, tips the scale.

We have considered all of the government's arguments and find them to be without merit. We vacate the judgment of conviction and remand with instructions that Ferrara be given the opportunity to withdraw his plea of guilty and plead anew.