Filed:  January 31, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 00-4929
(CR-95-131-F)

United States of America,

Plaintiff - Appellee,

versus

Marc Simpson,

Defendant - Appellant.

O R D E R

The court amends its opinion filed December 19, 2001, as follows:

On page 5, third full paragraph, line 5 -- the section is corrected to read "§ 3583(e)(3)."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

## UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.                                                No. 00-4929

MARC SIMPSON,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(CR-95-131-F)

Argued: September 27, 2001

Decided: December 19, 2001

Before WIDENER, NIEMEYER, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Traxler wrote an
opinion concurring in part and concurring in the judgment.

_____

### COUNSEL

**ARGUED:** Shea Riggsbee Denning, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Raleigh, North Carolina, for Appellant. Anne Marga-
ret Hayes, Assistant United States Attorney, Raleigh, North Carolina,
for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public
Defender, Raleigh, North Carolina, for Appellant. Janice McKenzie
Cole, United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Upon revocation of Marc Simpson's supervised release, which was
imposed as part of his sentence for a drug-trafficking conviction, the
district court sentenced Simpson to two years imprisonment, followed
by three years supervised release. Simpson appeals this sentence, con-
tending that (1) the district court acted vindictively; (2) the amount of
the sentence was plainly unreasonable; and (3) the sentence exceeded
the length authorized by 18 U.S.C. §§ 3583(e)(3) and 3583(h). For the
reasons that follow, we affirm.

I

Pursuant to a plea agreement, Simpson pleaded guilty in 1995 to
a criminal information charging him with conspiracy to distribute an
unspecified amount of cocaine base, in violation of 21 U.S.C. § 846.
In the plea agreement, Simpson waived indictment and acknowledged
that he faced a penalty of "not less than 10 years nor more than life
. . . plus a term of supervised release of at least five years." After
accepting Simpson's guilty plea, the district court sentenced Simpson
to 120 months' imprisonment and five years supervised release. Pur-
suant to the government's Rule 35 motion, filed in recognition of
Simpson's substantial assistance, the term of imprisonment was later
reduced to 72 months. Simpson served his term of imprisonment and
was released from custody on September 4, 1999.

Nine months after his release, Simpson was charged with violating
the conditions of supervised release, based on his failure to report as
directed, failure to participate in substance abuse treatment, and fail-
ure to notify his probation officer of changes in his address. In resolu-
tion of the violations, Simpson voluntarily agreed to be placed in a
community correction center for 90 days and was released from the
center on September 20, 2000.

2

Approximately two months after his release from the community center, Simpson's probation officer moved for revocation of Simpson's supervised release based on his absconding from supervision, failing to report to the probation officer as directed, and failing to submit written reports within the first five days of each month. At the revocation hearing, Simpson's attorney admitted that Simpson absconded from supervision and that he failed to report to his probation officer on October 24, 2000, stating in explanation that Simpson telephoned his officer on September 26 and November 8, 2000. With respect to the written reports, Simpson admitted that he failed to file the June and September reports, but denied failing to file the August report. When Simpson addressed the court in person, he told the court that he had experienced financial problems, that he had gotten frustrated, and that he was having problems coping. He said also that he did not feel comfortable talking to his probation officer about these problems.

After the court stated that it had considered the policy statements on revocation and it recognized that the range advised by the Sentencing Guidelines was "two to nine months,"* the court ordered Simpson to be imprisoned for 18 months followed by 36 months of supervised release.

Simpson's attorney then informed the court that Simpson had something more to say, and Simpson again addressed the court. The court interrupted, however, stating to Simpson's attorney: "I tell you what I'm going to do, I'm going to let you put your man on if you want to come down here and be sworn. Just so you understand the effects of being sworn and testifying." After being sworn, Simpson proceeded to offer various excuses for his violations, repeatedly mentioning his feelings of helplessness and his discomfort in talking to his probation officer. In addition, Simpson placed blame on the officer for some of his violations.

After Simpson gave this testimony, the court reconsidered its earlier decision, stating, "I've heard you testify. I think 24 months is appropriate followed by 36 months supervised release as indicated."

*The correct range was actually three to nine months. *See* U.S.S.G. § 7B1.4(a).

The court then entered a sentence of 24 months incarceration fol-
lowed by 36 months of supervised release.

From this sentence, Simpson filed this appeal.

## II

Simpson contends first that the district court's decision to increase
his sentence from 18 months to 24 months after he testified was vin-
dictive and, therefore, in violation of due process. *See United States
v. Lundien*, 769 F.2d 981, 986-87 (4th Cir. 1985) (noting that a sen-
tence enhanced "because of the vindictiveness or other plainly
improper motive of the trial court would be fundamentally unfair and
would deny the defendant due process"). Simpson argues that the dis-
trict court's sentencing decision was motivated by a desire to punish
him for choosing to testify at the sentencing hearing.

We find no evidence in the record, however, indicating that the dis-
trict court acted vindictively, and the record provides no reason to
presume vindictiveness. Simpson's testimony gave the district court
an ample reason to increase the sentence from 18 months to 24
months because it demonstrated more fully Simpson's past problems
with obeying the requirements of supervised release and his likely
future refusal to obey those requirements. Not only did Simpson fail
to accept responsibility for his violations, he attempted to shift the
blame to his probation officer, indicating his inability to be subject to
a program of supervised release. After hearing this testimony, the dis-
trict court remarked, "I've heard you testify. I think 24 months is
appropriate followed by 36 months of supervised release as indi-
cated." Because the record demonstrates a valid reason for the
increase, there is no basis from which to presume that the district
court based the increase on the fact that Simpson testified. *See Ala-
bama v. Smith*, 490 U.S. 794, 799 (1989) (noting that generally vin-
dictiveness will not be presumed and the defendant must prove actual
vindictiveness).

## III

Simpson also contends that his 24 month sentence was excessive
in light of the suggested sentencing range for Grade C supervised

release violations found in Chapter 7 of the Sentencing Guidelines and the sentencing factors set out in 18 U.S.C. § 3553(a).

While Chapter 7 of the Sentencing Guidelines contains suggested terms of imprisonment for different grades of supervised release violations, *see* U.S.S.G. § 7B1.4(a), these suggested ranges are included only to "provide helpful assistance" to courts in sentencing and are not mandatory. *United States v. Davis*, 53 F.3d 638, 641 (4th Cir. 1995).

The evidence in the record indicates that during the two periods when Simpson was not housed in a correctional facility or a halfway house, he demonstrated a consistent refusal to submit to supervision and cooperate with his probation officer. Even after his first violations of the conditions of supervised release resulted in his placement in a halfway house for 90 days, he continued to miss scheduled meetings, failed to turn in required reports, and refused to divulge his change of address to his probation officer. Given these circumstances, we cannot conclude that the sentence imposed in this case was "plainly unreasonable." 18 U.S.C. § 3742(A)(4).

IV

Finally, Simpson contends that because the original information under which he was charged did not include a drug quantity, his underlying conviction must be treated as a violation of 21 U.S.C. § 841(b)(1)(C), which is classified as a Class C felony. *See* 18 U.S.C. § 3583(e)(3) & (h); *see also Apprendi v. New Jersey*, 530 U.S. 466 (2000).

We find, however, that the principles of *Apprendi* do not apply in this case. Simpson waived his right to an indictment and pleaded guilty pursuant to a criminal information, which could be amended by the government without the intervention of a grand jury. When pleading guilty, Simpson agreed with the government not only to a guilty plea but also to a sentence range of ten years imprisonment to life, a sentence that could only be imposed for a Class A felony. *See* 18 U.S.C. § 3559 (Classifying Felonies). Thus in the plea agreement, which Simpson signed, the parties agreed to a charge that was a Class

A felony. Therefore, Simpson cannot now contend that a revocation

5

of his supervised release could only fall within the allowable range for Class C felonies because he pleaded guilty to a Class A felony.

Accordingly, the judgment of the district court is

*AFFIRMED.*

TRAXLER, Circuit Judge, concurring in part and concurring in the judgment:

I am pleased to concur in parts I, II, and III of the majority opinion. With regard to part IV, I concur in the judgment and write separately to give my reason.

Under the law at the time Simpson pled guilty, Simpson could have received a maximum sentence of life in prison even though no drug quantity appeared in the information to which he pled guilty. There is no question that the normal force and effect of Simpson's having pled guilty to an offense with a maximum punishment of life imprisonment was to make him a Class A felon for purposes of revocation proceedings. *See* 18 U.S.C.A. §§ 3559(a)(1), 3583(e)(3) (West 2000). Now, in a proceeding that has an independent purpose other than to overturn his original sentence, Simpson seeks to deprive that sentence of its normal force and effect by arguing that it violated *Apprendi.* That is the very definition of a collateral attack. *See Parke v. Raley*, 506 U.S. 20, 30 (1992) ("Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments."). Federal sentences, however, are not subject to collateral attack by such means. Rather, "[t]he exclusive remedy for testing the validity of a . . . [federal] sentence, unless it is inadequate or ineffective" is a motion under 28 U.S.C.A. § 2255 (West Supp. 2001). *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). *See also, e.g., Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992) ("Section 2255 is the proper vehicle for collaterally attacking the validity of a . . . [federal] sentence."). The bigger problem for Simpson, however, is not that he is attempting to collaterally attack his sentence by the wrong means, but that defendants may not collaterally attack their sentences on

*Apprendi* grounds,
*see United States v. Sanders*, 247 F.3d 139, 146 (4th Cir.
2001) (hold-

6

ing that *Apprendi* does not apply to cases on collateral review), which
is effectively what Simpson is attempting to do. Thus, I would affirm
the revocation sentence on the basis that Simpson is attempting to
mount an impermissible collateral attack on his original sentence.

7